**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

PAUL BOLIN                                                                    PLAINTIFF

v.                                        4:07CV00625 JLH/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                       DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge J. Leon
Holmes.  The parties may file specific objections to these findings and recommendations and must
provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no
later than eleven (11) days from the date of the findings and recommendations.  A copy must be
served on the opposing party.  The District Judge, even in the absence of objections, may reject these
proposed findings and recommendations in whole or in part.

## RECOMMENDED DISPOSITION

Plaintiff, Paul Bolin, has appealed the final decision of the Commissioner of the Social
Security Administration denying his claim for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI").  Both parties have submitted Appeal Briefs (docket entries
#8 and #9), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is
supported by substantial evidence on the record as a whole and whether it is based on legal error.
*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  While "substantial
evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1]
"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

---

[1]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleges that he is limited in his ability to work by high blood pressure, a stroke (which affected the right side of his body), lupus, poor eyesight, hearing loss, stomach ulcers, and asthma. (Tr. 101.) After conducting an administrative hearing, during which Plaintiff, his wife, and a vocational expert testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through March 21, 2006, the date of his decision. (Tr. 24-25.) On June 18, 2007, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision; thereby making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed his Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 39 years old at the time of the administrative hearing and had graduated from high school, with one year of college. (Tr. 264.) His past relevant work included a job as a correctional officer. (Tr. 16, 89-90.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2005) and § 404.1520(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.* at § 416.920(b) and § 404.1520(b) .

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 416.920(a)(4)(ii) and § 404.1520(a)(4)(ii). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 416.920(a)(4)(iii) and § 404.1520(a)(4)(iii).[2]  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.*, § 416.920(a)(4)(iv) and § 404.1520(a)(4)(iv).  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  *Id.*, § 416.920(a)(4)(v) and § 404.1520(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded.  *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date (Tr. 16); (2) had a "severe" impairment, a history of obesity (Tr. 17); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not credible (Tr. 22); (5) retained the RFC for a full range of light work (Tr. 23); was unable to perform his past relevant work (*id.*); and (6) was able to perform a substantial number of jobs that existed in the national economy.  *Id.*  Thus, the ALJ concluded that Plaintiff was not disabled.  *Id.*

In reaching his decision, the ALJ correctly noted that, once Plaintiff was determined to be unable to perform his past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that he could perform, given his RFC, age, education and past work.  *Id.*  He utilized the Medical-Vocational Guidelines to direct a conclusion that Plaintiff was not disabled.  *Id.*

In his Appeal Brief, Plaintiff argues that the ALJ erred in: (1) substituting his opinion for that of the medical experts, particularly his treating neurologist; (2) failing to apply Social Security

---

[2]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence.  *Id.*, § 404.1520(e) and § 404.1520(a)(4).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5.  *Id.*

Ruling 02-1p in evaluating his obesity; (3) failing to follow the "slight abnormality" standard in finding that his headaches, right-sided weakness, pain, gastroesophageal reflux disease, hypertension and vision were not "severe" impairments; and (4) improperly applying the Medical-Vocational Guidelines.  The Court will discuss these arguments in the order they were raised in Plaintiff's Appeal Brief.

First, Plaintiff contends that the ALJ erred in substituting his opinion for that of the medical experts, particularly his treating neurologist.  (*Pltf.'s App. Br.* at 15-18.)  Plaintiff saw David Silas, M.D., a neurologist, for approximately 15 months.  (Tr. 178-88, 214-21.)  On Plaintiff's second visit, May 10, 2004, Dr. Silas listed his impressions: TIA or stroke, lupus, visual loss and HTN.  (Tr. 186.) He indicated, "A diagnosis of a stroke secondary to his Lupus is a consideration, he is to continue on his ASA."  *Id.*  Under "PLAN," he wrote: "The patient has multiple medical problems and at this time is unable to work and we will re-evaluate his progress in 3 months and decide upon work release."  *Id.*  At the time he made these notes, Dr. Silas knew that Plaintiff worked on horseback as a prison guard.  (Tr. 187.)

In June of 2004, Dr. Silas filled in a Certificate of Health Care Provider for the Arkansas Department of Correction, Plaintiff's employer.  (Tr. 211-13.)  One question read:  "If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?"  (Tr. 212.)  Dr. Silas answered, "Not at this time."  *Id.*  The Certificate went on: "If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or employer should supply you with information about the essential job functions[)]?"  *Id.*  Dr. Silas replied: "Patient should not work in any capacity that is responsible for prisoners."  *Id.*  In August, 2004, he reiterated that Plaintiff was unable to work, with re-evaluation in one month.  (Tr. 185.)

In January of 2005, Dr. Silas completed another Certificate indicating that Plaintiff was permanently incapacitated.  (Tr. 190-92.)  In January of 2006, Dr. Silas completed a questionnaire

indicating that Plaintiff was capable of low stress jobs, subject to certain limitations. (Tr. 239-44.)

The ALJ considered all of Dr. Silas' opinions, but rejected any conclusion that Plaintiff was disabled because it was inconsistent with: (1) Dr. Silas' clinical and laboratory findings; (2) the objective medical evidence; and (3) other evidence of record. (Tr. 17-19.) Specifically, the ALJ noted that there was no objective medical evidence of cerebrovascular accident and no evidence that Plaintiff ever underwent an MRI scan of the brain or underwent physical therapy after his alleged CVA.[3] (Tr. 19.) Plaintiff points out that an MRI of his brain was performed on March 25, 2004. (*Pltf.'s App. Br.* at 16.) While this MRI was provided only to the Appeals Council, not the ALJ (Tr. 4), it was unremarkable. (Tr. 245.)

Of course, Dr. Silas's opinion, in January of 2005, that Plaintiff could not be gainfully employed is *not* a medical opinion.[4] Rather, it is an opinion on the application of a statute, a task assigned solely to the discretion of the Commissioner. As Social Security Ruling 96-5p makes clear:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions

---

[3]This is a somewhat unusual case in that there is significant disparity among the doctors' findings. For example, while Dr. Silas diagnosed lupus, Susanna Shermer, M.D., another of Plaintiff's treating physicians (Tr. 128-60, 202-08), did not believe that he had lupus:

> As we have discussed, I do not feel you have Lupus. You had a very nonspecific positive test which is often positive in very healthy people in the general population. Your numerous other lab tests that are much more specific for Lupus were all normal. However, I understand you would prefer a second opinion. I will therefore be happy to refer you to a rheumatologist.

(Tr. 207.)

Cummins Lue, M.D., a rheumatologist, concurred that Plaintiff did not have obvious manifestations of lupus or similar connective tissue disease. (Tr. 225.) He also added, "I do specifically not see the laboratory test workup providing an explanation for his CVA." *Id.*

The trier of fact has the duty to resolve conflicting medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Vandenboom v. Barnhart*, 412 F.3d 924, 928 (8th Cir. 2005). Proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992); *Simuel v. Apfel*, 21 F.Supp.2d 941, 943 (E.D. Ark. 1998). In this case, the ALJ properly focused on Plaintiff's ability to function despite his impairment, rather than on a diagnosis. *Anderson v. Apfel*, 996 F.Supp 869, 873 (E.D. Ark. 1998). There must be a functional loss establishing an inability to engage in substantial gainful activity before disability occurs. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[4]In January of 2006, Dr. Silas seems to have changed his mind by finding that Plaintiff was capable of performing low stress jobs subject to certain limitations.

in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

*See Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002); *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997). Thus, the Court concludes that the ALJ was justified in rejecting some of the opinions expressed by Dr. Silas that Plaintiff was disabled at certain points in time.

Second, Plaintiff contends that the ALJ failed to apply Social Security Ruling 02-1p in evaluating the severity of his obesity.[5] (*Pltf.'s App. Br.* at 18-19.) After finding that Plaintiff's well-documented history of obesity was his only severe impairment (Tr. 17) (citation omitted), the ALJ added the following:

He [Plaintiff] testified at the hearing that he was 5 feet 7 inches in height and currently weighed 235 pounds, but the record shows that he has weighed as much as 252 pounds in the past (Exhibit 11F, p. 6). Listing 9.09, obesity listing, was modified effective October 25, 1999 (64 FR 46122 (1999)). Impairments caused by morbid obesity will usually be associated with disorders of the musculoskeletal, respiratory, and cardiovascular systems and the advent of such disorders is usually the major cause of disability. Obesity is a medically determinable impairment and it is properly considered when evaluating disability. I have considered the combined effects of obesity with his other impairments. In this case, the claimant's obesity, along with his other impairments, has not eroded his occupational base to the point that he is disabled. His obesity has not had more than a minimal impact on his other impairments and I find that his obesity would not more than minimally affect his ability to carry on gainful activity at the light exertional level.

(Tr. 21-22.)

Significantly, in his application for benefits and during the administrative hearing, Plaintiff did not claim disability based on his obesity. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). More importantly, as the ALJ observed, there is no evidence in the record that Plaintiff's obesity imposed any limitations on his ability to work. *Id.*; *see Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (although treating doctors noted claimant was obese and should lose weight, none suggested obesity imposed additional work-related limitations, and claimant did not testify that

---

[5]Plaintiff did not explain in what way the ALJ failed to apply Social Security Ruling 02-1p.

obesity imposed additional restrictions).  To the contrary, Plaintiff had weighed about the same for ten years.  (Tr. 187.)  Thus, the Court concludes that the ALJ did not fail to properly apply that Ruling.

Third, Plaintiff contends that the ALJ did not use the proper standard in finding that his headaches, right-sided weakness, pain, gastroesophageal reflux disease, hypertension and vision were not "severe" impairments.  (*Pltf.'s App. Br.* at 19-20.)  A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. §§ 404.1520(c), 416.920(c) (2005).  It has "more than a minimal effect on the claimant's ability to work."[6]  *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989).

Plaintiff places undue emphasis on the distinction between impairments that are "severe" and those that are not.  Once a claimant gets past the Step 2 threshold of having a "severe" impairment, the ALJ considers all impairments, including those that are less than "severe," in determining the claimant's RFC.  20 C.F.R. §§ 404.1545(e); 416.945(e) (2005); Social Security Ruling 96-8p, at 5.  Even if one of the aforementioned impairments was "severe," Plaintiff has not demonstrated any harm caused by the ALJ's failure to find that it was.  Thus, the Court concludes that this argument is without merit.

―――――――――――――

[6]20 C.F.R. §§ 404.1521 and 416.921 (2005) provide the following:
   (a)   *Non-severe impairment(s).*   An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
   (b)   *Basic work activities.*   When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--
   (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
   (2)  Capacities for seeing, hearing, and speaking;
   (3)  Understanding, carrying out, and remembering simple instructions;
   (4)  Use of judgment;
   (5)  Responding appropriately to supervision, co-workers and usual work situations; and
   (6)  Dealing with changes in a routine work setting.

Finally, Plaintiff contends that, because he suffered from nonexertional impairments, the ALJ improperly applied the Medical-Vocational Guidelines.  (*Pltf.'s App. Br.* at 20-21.)

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert.  *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled."  *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988).  Instead, testimony of a vocational expert must be taken.  *Groeper*, 932 F.2d at 1235.  The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines.  *Thompson*, 850 F.2d at 349-350 (emphasis added).

*Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (emphasis in original).  *Accord: McGeorge v. Barnhart*, 321 F.3d 766, 768-69 (8th Cir. 2003); *Holey v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001);  *Hold v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999).

The record firmly supports the ALJ's finding that Plaintiff had no nonexertional impairment that significantly affected his RFC to perform a full range of light work activities.  Thus, the Court concludes that the ALJ properly utilized the Medical-Vocational Guidelines to find that he was not disabled.

The record in this case contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ.  *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this <u>25th</u> day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE